**Floyd H. SHAVER, Plaintiff–Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA and United States Fidelity and Guaranty Company, Defendants–Respondents.**

No. 17324.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 24, 1991.

William H. McDonald, Richard C. Miller, John F. Appelquist, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for plaintiff-appellant.

Steven D. Ruse, Shughart Thomson & Kilroy, P.C., Overland Park, Kan., Thomas A. Sheehan, Shughart Thomson & Kilroy, P.C., Kansas City, for respondent Insurance Co. of North America.

William C. Love, Harrison, Tucker & Hyde, Springfield, for respondent U.S. Fidelity & Guar. Co.

MAUS, Judge.

Hays–Fendler Construction Company (Hays–Fendler) was the general contractor for the construction of the Centerre Bank Building in Springfield. The building was completed in the early 1970s. By his petition, plaintiff Floyd H. Shaver alleged that on February 12, 1981, he was severely injured by reason of Hays–Fendler's negligence in constructing an air shaft in the Centerre Bank Building which contained an electrical sump pump requiring maintenance, but which air shaft was without any reasonable means of access thereto. Shaver and Hays–Fendler entered into an agreement under § 537.065 limiting Shaver's recovery to any insurer which insured the legal liability of Hays–Fendler for that construction. Thereafter, Shaver took a judgment for $2,500,000.00 against Hays–Fendler. Shaver then instituted this action in the nature of a garnishment against defendant Insurance Company of North America (INA) and defendant United States Fidelity & Guaranty Company (USF & G) as insurers insuring the liability of Hays–Fendler to him. The trial court rendered a summary judgment against Shaver and in favor of both defendants. Shaver appeals.

The basic facts upon which the liability of Hays–Fendler is premised have been stated. The evidentiary material before the trial court, in considering the motion for a summary judgment, established the following additional facts. Hays–Fendler was the named insured in a liability insurance policy No. GAL 21 25 76, issued by INA. The policy period of that policy was January 1, 1973 through January 1, 1974. Hays–Fendler was the named insured in liability policy No. 1CC663723, issued by USF & G. The policy period of that policy was January 1, 1974 through January 1, 1975.

The two policies are in customary printed form and are substantially similar. Each includes a "Declarations" sheet to be completed to establish the limits of liability and coverages set forth in the printed form purchased by the named insured. Each printed policy includes a "Completed Operations Hazard". The copy of Policy No. GAL 21 25 76, produced by INA, includes a declaration sheet. That sheet establishes that the insurance purchased by Hays–Fendler from INA did not include the "Completed Operations Hazard". USF & G had destroyed its copy of Policy No. 1CC663723. That company did provide an exemplar of the policy form that would have been used for Policy No. 1CC663723. The exemplar provided did not include a completed declarations sheet.

Both of the policies provided liability coverage for bodily injuries under the following terms:

"The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of ... bodily injury ... to which this insurance applies, caused by an occurrence...."

The policies both defined the term "bodily injury" as follows:

" 'Bodily injury' means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;".

The policies also contained identical definitions of the term "occurrence", which were as follows:

" 'Occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured."

Finally, the policies each defined the term "completed operations hazard" as follows:

"'Completed operations hazard' includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured...."

Following a hearing upon motions for summary judgment filed by INA and USF & G, the trial court made the following finding:

"The Court finds and concludes that there is no genuine issue as to any material fact, and that as a matter of law there is no coverage under the insurance policies issued by USF & G and INA applicable to the injury sustained by plaintiff or to the judgment obtained by plaintiff against [Hays–Fendler]."

On that basis, the trial court entered a summary judgment against the plaintiff in favor of both defendants.

Shaver's first point is

"[t]he trial court erred in granting INA's and USF & G's Motions for Summary Judgment because they were not entitled to judgment as a matter of law, for the reason that the provisions of the subject policies were ambiguous and should have been construed to afford coverage for Shaver's claim against Hays–Fendler."

To support that point, Shaver contends that the definition of the term "bodily injury" is ambiguous by reason of the definitions of "occurrence" and "completed operations hazard". He argues the ambiguity is created by "the definition of 'occurrence' and the definition of 'completed operations hazard,' which appear to indicate that coverage exists for claims of bodily injury, without regard to when the bodily injuries are sustained. The 'occurrence' definition refers to 'an accident, including continuous or *repeated exposure to conditions,*' which appears to remove any temporal requirement to coverage under the subject poli-

cies; similarly, 'completed operations hazard' contemplates 'a representation or warranty' by the insured 'made at any time with respect thereto, but only if the bodily injury or property damage occurs *after such operations have been completed or abandoned.*" (Emphasis in original.) He concludes that because of such ambiguity, the policy must be construed in favor of Shaver and against the insurers and, therefore, the trial court erred.

Initially, it must be noted that the plaintiff's argument is, in part, premised upon the definition of "completed operations hazard". This argument does not take into consideration the fact the evidentiary material established that INA did not provide insurance for the completed operations hazard. Whether USF & G provided insurance for that hazard is a matter of speculation.

 Under his petition in this action, the burden is upon the plaintiff to establish that USF & G did insure against the completed operations hazard. *Estrin Construction Co., Inc. v. Aetna Cas. & Sur. Co.,* 612 S.W.2d 413 (Mo.App.1981). Since its amendment, effective January 1, 1988, Rule 74.04(c) provides "[t]he judgment sought shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law...." Under that rule as amended, "[i]t is no longer necessary for a movant to show by unassailable proof that he is entitled to a summary judgment." *Hayes v. Hatfield,* 758 S.W.2d 470, 472 (Mo.App.1988).

"In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). Also see *Defino v. Civic Center Corp.,* 780 S.W.2d 665 (Mo.App.1989).

The evidentiary material demonstrates Shaver made no showing sufficient to establish that USF & G provided completed operations coverage. Under amended Rule 74.04 the propriety of the summary judgment against Shaver must be considered on the basis that the insurance coverage provided by INA and USF & G did not include the completed operations hazard. Although, as the authorities hereinafter cited demonstrate, the summary judgment would have been proper even if the defendants had provided such coverage.

The basic liability insurance provided by each defendant is to "pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of ... bodily injury ... to which this insurance applies, caused by an occurrence...." It is obvious that the extent of the insuring obligation of each defendant must rest upon the definition of "bodily injury". As stated, each policy defines "bodily injury" as follows:

" 'Bodily injury' means bodily injury, sickness or disease sustained by any person *which occurs during the policy period,* including death at any time resulting therefrom." (Emphasis added.)

This language is clear-cut. The phrase "which occurs during the policy period" is unambiguous. It refers to the time at which the bodily injury occurs.

"It is well settled that the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the alleged wrongful act was committed, but is the time *when the complaining party was actually damaged."* *Kirchner v. Hartford Accident & Indemnity Co.,* 440 S.W.2d 751, 756 (Mo. App.1969). (Emphasis in original.)

Also see *United States Fidelity and Guaranty Co. v. Houf,* 695 S.W.2d 924 (Mo.App. 1985); *Opies Milk Haulers v. Twin City Fire Ins. Co.,* 755 S.W.2d 300 (Mo.App. 1988); *Hawkeye–Security Ins. Co. v. Iowa National Mutual Ins. Co.,* 567 S.W.2d 719 (Mo.App.1978); *Van Wyck Associates v. St. Paul Fire & Marine Ins. Co.,* 115 Misc.2d 447, 454 N.Y.S.2d 266 (N.Y.Sup.Ct. 1982), aff'd 95 A.D.2d 989, 464 N.Y.S.2d 617 (1983); *Hallmark Insurance Co. v. Superior Court,* 201 Cal.App.3d 1014, 247 Cal.Rptr. 638 (1988); *Bill Binko Chrysler–Plymouth, Inc. v. Compass Insurance Company, Inc.,* 385 So.2d 692 (Fla.App. 1980); *United States Fidelity & Guaranty Co. v. Warwick Development Co., Inc.,* 446 So.2d 1021 (Ala.1984); *Kremers–Urban Co. v. American Employers Insurance Co.,* 119 Wis.2d 722, 351 N.W.2d 156 (1984). Shaver's injury occurred in 1981, more than five years after the expiration of the last policy period of the two policies which are the subject of the plaintiff's action.

The unambiguous definition of "bodily injury" is not altered because that term is embodied in the definition of "occurrence".

"The definition of 'occurrence' in the policy is derived from a 1966 revision of a nationally standardized liability policy form. The underwriting intent of the language is to make coverage depend upon whether bodily injury results during the policy period. Tarpey, *The New Comprehensive Policy: Some of the Changes,* 33 Ins. Counsel J. 223; Gowan, *Completed Operations and Products Liability Insurance Coverage of the New Comprehensive General–Automobile Policy,* A.B.A. Section of Insurance, Negligence and Compensation Law, 1965–1966 Proceedings, pp. 265, 280; R. Keeton, Insurance Law, §§ 2.11(d), 5.10(d). This intent is emphasized by the further explicit provision, noted *supra,* that '[t]his insurance applies only to bodily injury * * * which occurs during the policy period * * *'." *Singsaas v. Diederich,* 307 Minn. 153, 238 N.W.2d 878, 880 (1976). (Omissions in original.)

Nor is the definition of "bodily injury" made ambiguous because it is a part of the definition of "completed operations hazard".

"As defined in plaintiffs' policy, '"*completed operations hazard*" includes *bodily injury* and *property damage* arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the *named insured*'. Both '*bodily injury*' and '*occurrence*' are defined to include the limiting language 'during the policy period'. Thus, a reading of the policy as a whole clearly advises the insured that covered damage must occur 'during the policy period'. Moreover, '[a]n insured would expect to find a time limitation expressed in the policy, and would not reasonably assume, after reading only the completed operations definition, that he could cease paying premiums but enjoy completed operations coverage indefinitely' (*Travelers Ins. Co. v. C.J. Gayfer's and Co.,* 366 So.2d 1199, 1201 [Fla.App.1979])." *Acorn Ponds, Inc. v. Hartford Ins. Co.,* 105 A.D.2d 723, 481 N.Y.S.2d 392, 393 (N.Y.App.Div.1984). (Emphasis in original.)

Also see *Harbour v. Mid-Continent Cas. Co.,* 752 P.2d 258 (Okl.App.1987); *Young v. Insurance Co. of North America,* 870 F.2d 610 (11th Cir.1989); *Miccio v. National Surety Corp.,* 170 A.D.2d 937, 566 N.Y.S.2d 760 (N.Y.A.D. 3 Dept.1991). Shaver's first point has no merit.

■ Shaver's second point is that the trial court erred "because genuine issues exist as to material facts in this civil action, in that Hays–Fendler may have had a reasonable expectation of coverage under the subject policies for Shaver's claim against it."

An extended discussion of the "reasonable expectation doctrine" is not necessary. The application of that doctrine "depends on the presence of an ambiguity in the contract language." *Rodriguez v. General Acc. Ins. Co.,* 808 S.W.2d 379, 382 (Mo. banc 1991). The applicable terms of the two policies involved are not ambiguous and are not subject to a reasonable expectation that Hays–Fendler would enjoy insurance coverage indefinitely. Shaver's second point is denied and judgment is affirmed.

FLANIGAN, C.J., and SHRUM, P.J., concur.